UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANUEL TIJERINO,

Plaintiff,

– *against* –

SPOTIFY USA INC.,

Defendant.

**OPINION & ORDER**

25-cv-08176 (ER)

RAMOS, D.J.:

Manuel Tijerino, who is proceeding *pro se* and *in forma pauperis*, brings suit against Spotify USA Inc. ("Spotify") alleging claims of patent infringement. Doc. 32. Specifically, Tijerino asserts that Spotify infringed on a patent owned by him: U.S. Patent No. 9,146,925 (the "'925 Patent"). *Id.* at 1. Pending before the Court is Spotify's motion to stay pending its petition before the Patent Trial and Appeals Board (the "PTAB") for *inter partes* review ("IPR") of the '925 Patent and its pending motion to dismiss pursuant to Rule 12(b)(6). Doc. 137. For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

Tijerino is the creator of check1two.com and describes himself as "a pioneer" in the creation of media network systems enabling independent musical artists to promote themselves by distributing their work in "real-time." Doc. 32 at 56–57. Spotify is a music streaming platform. *Id.* at 57.

Tijerino filed a U.S. patent application on July 27, 2010. *See* Doc. 1-3 at 1. The patent application was approved on September 29, 2015, resulting in the '925 Patent titled "User Defined Internet Jukebox Kiosks Set Top Box." *Id.* The patent abstract includes:

> A computer readable storge method and system allowing any artist to upload media, including images, video, and music, to a server, have that media uploaded in a system of internet jukeboxes placed in establishments for instant playback of media by paying customers. The system of internet jukeboxes programmed to maintain an account for the artist allowing the artist to earn fees and royalties from playback of the media and to provide for automated payment of rent, and other fees due the establishment and the service provider.

*Id.* The ’925 Patent contains seventeen claims—two independent and fifteen dependent. *Id.* at 55–56. Claim 1, an independent claim, describes “[a] computer implemented method for real time music distribution of new media [f]or allowing an artist to control availability of the new media for playback in public venues via a jukebox.” *Id.* at 55. The other independent claim, Claim 3, describes “[a] non transitory computer-readable media embodying program instructions for execution by a computer.” *Id.* at 55–56. The remaining fifteen claims—Claims 2 and 4 through 17—are dependent on Claim 1. *See id.*

Tijerino contends that beginning in approximately 2018 or 2019, Spotify’s “Spotify for Artist” program “infringed upon [the] ’925 patent by directly infringing every element of independent claims 1 and 3.” Doc. 32 at 5. More specifically, Tijerino claims that the “Spotify for Artist” program infringed the patent by “allowing artists to upload [music] directly, calculating royalties, and paying artist[s] direct[ly] or indirectly through [performance rights organizations].” *Id.* at 53.

Tijerino asserts that he contacted Spotify to offer a license to the ’925 Patent, but that “Spotify did not respond[] substantively, prompting this action.” *Id.* at 3.

**B. Procedural Background**

Tijerino initially filed this action on September 18, 2024, in the United States District Court for the Eastern District of Louisiana. Doc. 1. On March 19, 2025, Tijerino filed an amended complaint alleging that Spotify infringed the ’925 Patent in violation of 35 U.S.C. § 271. Doc. 32. Specifically, Tijerino alleges that the “Spotify for Artist”

program infringed the ’925 Patent “by implementing technology and methods covered by the patent without authorization.” *Id.* at 51.

Spotify filed a motion to dismiss on January 14, 2025. Doc. 13. Spotify argued that the complaint should be dismissed for improper venue or, in the alternative, transferred to a proper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Doc. 13-2 at 3. Spotify also argued that the complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.*

On June 26, 2025, the District Court for the Eastern District of Louisiana deferred resolution of Spotify’s motion to dismiss and ordered venue-related discovery to determine whether that district was a proper venue. Doc. 76.

On September 8, 2025, the court found venue improper in the Eastern District of Louisiana and transferred this action to the Southern District of New York, noting this to be both where Spotify maintains its principal place of business and the venue to which it requested transfer, and that Spotify had conceded the action could have been brought there. Doc. 107 at 1, 13. The court deferred ruling on Spotify’s Rule 12(b)(6) motion.[1] *Id.* at 2.

Meanwhile, on July 11, 2025, Spotify filed a petition for *inter partes* review with the PTAB seeking review of all claims of the ’925 Patent. *See* Doc. 137-4. Spotify contends that the ’925 Patent does not present any patentable improvement over the prior art and should therefore be canceled in its entirety. *See id.* at 11. On December 17, 2025, the PTAB instituted review of all claims of the ’925 Patent. *See* Doc. 141-1.

---

[1] Spotify’s motion to dismiss pursuant to Rule 12(b)(6) remains pending before this Court. The Court notes the unusual procedural posture of the motion. Tijerino filed an amended complaint after Spotify filed its motion to dismiss, a fact Spotify does not dispute. Spotify does not contend, however, that its motion to dismiss was mooted by the amended complaint. Nor did the Eastern District of Louisiana treat it as such: that court ruled on Spotify’s Rule 12(b)(3) motion to dismiss after the amended complaint was filed, transferred the instant action to this Court, and explicitly deferred Spotify’s Rule 12(b)(6) motion to dismiss for this Court’s consideration. *See* Doc. 107 at 1–2.

On November 19, 2025, Spotify filed a motion for a stay pending resolution of the IPR and its Rule 12(b)(6) motion to dismiss. Doc. 137. Spotify contends that a stay pending the IPR is warranted because it may avoid the need for further litigation or simplify the remaining issues, because the case is still in its infancy, and because a stay will not prejudice Tijerino. Doc. 137-1 at 5. Spotify further contends that, to the extent the PTAB does not invalidate all the claims of the ’925 Patent, the stay should be extended through resolution of its Rule 12(b)(6) motion to dismiss.[2] *Id.*

On December 17, 2025, Tijerino filed a brief in opposition. Doc. 139. Specifically, Tijerino argues that a stay is “an extraordinary remedy,” and that Spotify’s request is premature, unsupported, and inconsistent with precedent. *Id.* at 1.

On December 29, 2025, Spotify filed a reply in further support of its motion.[3] Doc. 140.

## II. DISCUSSION

A court possesses inherent authority to stay proceedings as part of its power to manage its docket. As the Supreme Court has explained, “the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes

---

[2] Spotify attaches eight documents in support of its motion for a stay:

- The ‘925 Patent. Doc. 137-3;
- Spotify’s IPR petition (IPR2025-01280), dated July 11, 2025. Doc. 137-4;
- Tijerino’s preliminary response to the IPR petition, dated September 29, 2025. Doc. 137-5;
- A copy of Exhibits C-E attached to Tijerino’s complaint, Doc. 1-4. Doc. 137-6;
- A copy of “Plaintiff’s Third Set of Requests for Admission to Defendant Spotify USA Inc. Under Scheduling Order (Dkt. 22),” dated September 4, 2025. Doc. 137-7;
- A copy of “Plaintiff’s Fourth Set of Requests for Admission to Defendant Spotify USA Inc.,” dated September 8, 2025. Doc. 137-8;
- A copy of email correspondence exchanged between Charles C. Provine and Tijerino on September 24, 2025. Doc. 137-9; and
- A copy of “Defendant’s Responses and Objections to Plaintiff’s Improper Requests for Admission Concerning an Inter Partes Review Proceeding Pending Before the Patent Trial and Appeal Board,” dated October 8, 2025. Doc. 137-10.

[3] Spotify attaches the PTAB’s decision instituting *inter partes* review of all claims of the ’925 Patent to its reply brief. Doc. 141-1.

on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *accord Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015).

**A. Motion to Stay Pending *Inter Partes* Review**

*1. Legal Standard*

A court's inherent power to manage its docket includes the power to stay a patent infringement action during the pendency of IPR proceedings before the PTAB. *Kannuu Pty Ltd. v. Samsung Electronics Co., Ltd.*, No. 19-cv-4297 (ER), 2021 WL 195163, at *7 (S.D.N.Y. Jan. 19, 2021), *aff'd*, 15 F.4th 1101 (Fed. Cir. 2021).

In making the determination whether a stay is appropriate pending resolution of IPR proceedings, courts in this District commonly consider three factors: "(1) whether a stay will simplify the issues in question and trial of the case; (2) the stage of the proceedings; and (3) whether a stay will prejudice the nonmoving party." *Straight Path IP Group, Inc. v. Verizon Communications Inc.*, No. 16-cv-4236 (AJN), 2016 WL 6094114, at *2 (S.D.N.Y. Oct. 18, 2016) (quoting *CDX Diagnostics, Inc. v. U.S. Endoscopy Group, Inc.*, No. 13-cv-05669 (NSR), 2014 WL 2854656, at *2 (S.D.N.Y. June 20, 2014)). "These factors are not exclusive, however, and in the end, an overarching consideration of the circumstances in their totality governs." *Rovi Guides, Inc. v. Comcast Corp.*, No. 16-cv-9278 (JPO), 2017 WL 4876305, at *3 (S.D.N.Y. Oct. 27, 2017) (quoting *Straight Path*, 2016 WL 6094114, at *2). "The party seeking the stay bears the burden the demonstrating that such relief is warranted." *Straight Path*, 2016 WL 6094114, at *2.

*2. Analysis*

*a. Simplification of the Issues*

The first factor considers whether a stay will simplify the issues in question and trial of the case.

Spotify has challenged all seventeen claims of the '925 Patent, and the PTAB has determined that there is a reasonable likelihood that Spotify will prevail with respect to at least one of those claims. *See* Doc. 141-1 at 63. As such, the PTAB has instituted review of the entire patent. *Id.* at 63–64.

"Certainly, this factor favors a stay when all claims at issue are subject to IPR proceedings." *Kannuu Pty*, 2021 WL 195163, at *8. This is because the PTAB's decision will be binding on this Court, *see Rovi Guides*, 2017 WL 4876305, at *3 (citing 35 U.S.C. § 315(e)), and because IPR review "could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with [the] expert opinion of the [United States Patent and Trademark Office] and clarifying the scope of the claims," *CDX Diagnostics*, 2014 WL 2854656, at *3 (quoting *Target Therapeutics, Inc. v. SciMed Life Systems, Inc.*, No. C–94–20775 (RPA) (EAI), 1995 WL 20470, at *2 (N.D. Cal. Jan.13, 1995)). Regardless of the outcome, the claims at issue will be simplified through the IPR proceedings. *See Rovi Guides*, 2017 WL 4876305, at *3.

As Spotify correctly notes, if the PTAB cancels all of the patent claims, Tijerino's claims in this action would be rendered entirely moot. *See Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) (holding that, in general, when a claim is canceled by the PTAB, "the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot"). If the PTAB cancels only some claims, the issues before this Court will be correspondingly narrowed. *See Kannuu Pty*, 2021 WL 195163, at *9. And even if the PTAB upholds all claims, this Court will benefit from the PTAB's expert guidance contained in its decision. *See id.* In addition, Spotify would further be estopped from challenging the validity of the claims on grounds that it "raised or reasonably could have raised" during the IPR proceedings. 35 U.S.C. § 315(e)(2).

As such, Tijerino's contention that the PTAB proceeding "would not replace or resolve the core issues of this case—such as infringement, claim interpretation, discovery,

or remedies—all of which remain exclusively within this Court's jurisdiction," is without merit. Doc. 139 at 3; s*ee Rovi Guides*, 2017 WL 4876305, at *3 (explaining that decisions of the PTAB are binding on the courts) (citing 35 U.S.C. § 315(e)). And his further contention that "any purported 'guidance' from the PTAB would neither bind this Court on claim construction nor resolve the infringement issues that drive this case" is similarly unpersuasive. *Id.*; *see Molo Design, Ltd. v. Chanel, Inc.*, 21-cv-01578 (VEC), 2022 WL 2135628, at *2 (S.D.N.Y. May 2, 2022) (explaining that courts "benefit from the expert guidance contained in the PTAB's decision" even when the PTAB upholds the underlying patent claims).

Because all of the patent claims are under IPR proceedings, this factor weighs strongly in favor of a stay pending the PTAB's decision.

*b. Stage of the Proceeding*

The second factor considers the stage of the proceeding. "Courts typically find that this factor weighs against granting a stay where the case is past the early stages of proceedings and substantial discovery has occurred." *Molo Design*, 2022 WL 2135628, at *4. "Although what qualifies as an early stage is relative," courts generally consider a case sufficiently advanced to warrant denial of a request to stay "where the parties have fully briefed the issue of claim construction, attended a *Markman* hearing, and received a claim construction order, and discovery is well underway." *Id.* (quoting *Rovi Guides*, 2017 WL 4876305, at *3). By contrast, the stage of the proceedings favors a stay when discovery has been limited and "neither a claim construction hearing nor a trial has been scheduled." *Straight Path*, 2016 WL 6094114, at *3.

Spotify argues that this factor supports a stay because the parties have not served their infringement or invalidity contentions, briefed the issue of claim construction, or exchanged discovery beyond "a single venue-related deposition and limited venue-related document production." Doc. 137-1 at 11. Spotify also correctly notes that neither a *Markman* hearing nor trial date has been set. *Id.* at 10–11. Under these circumstances,

the Court agrees that that stage of the proceedings favors a stay. *See e.g.*, *Package Apparel, Inc. v. Tommy John, Inc.*, No. 24-cv-6371 (LJL), 2024 WL 4117200, at *4 (S.D.N.Y. Sept. 9, 2024) (holding that the stage of the proceeding favored a stay where no written discovery had been exchanged and the parties had not briefed the issue of claim construction, attended a Markman hearing, or received a claim construction order); *Molo Design*, 2022 WL 2135628, at *4; *CDX Diagnostics*, 2014 WL 2854656, at *4 (holding that the stage of the proceeding favored a stay where little to no discovery had taken place).

Tijerino nonetheless argues that "[a] defendant may not manufacture an early-stage record by pursuing threshold motions and resisting discovery, then invoke that posture to justify a stay." Doc. 139 at 14. Specifically, he argues that the procedural posture of this case was caused by Spotify's motion to transfer venue, "confirming that any delay is self-inflicted and cannot support a stay." *Id.* This argument is unpersuasive. First, the fact that Spotify sought to transfer from a venue later determined to be improper certainly does not, without more, establish that Spotify acted in bad faith or in a dilatory fashion. Second, and more fundamentally, although this action was commenced over a year and nine months ago, analysis of this factor focuses on the procedural progress of the case rather than the time that has passed since its commencement. *See Kannuu Pty*, 2021 WL 195163, at *10.

"Indeed, it may only serve to waste resources to litigate this matter when an *inter partes* review could render the case moot." *Goodman v. Samsung Electronics America, Inc.*, No. 17-cv-5539 (JGK), 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017). Because this case is still in its infancy, this factor weighs in favor of a stay pending IPR proceedings.

*c. Prejudice*

The third factor considers whether the nonmovant will suffer undue prejudice or tactical disadvantage as a result of a stay. "The question of undue prejudice or clear

tactical advantage is informed by four sub-factors, including (1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Rovi Guides*, 2017 WL 4876305, at *4 (internal quotations omitted). Notably, "it is well established that 'mere delay in the litigation does not establish undue prejudice' for purposes of a motion to stay." *Goodman*, 2017 WL 5636286, at *3 (quoting *Rovi Guides*, 2017 WL 4876305, at *4). Each sub-factor is addressed in turn.

*i. Timing of the Review Request*

Tijerno filed this action in September 2024, and Spotify filed its IPR petition in July 2025. *See* Doc. 1; Doc. 137-4. Courts in this District have regularly found this sub-factor weighs in favor of a stay where the party filed its IPR petition within the one-year statutory deadline. *See e.g.*, *Nike, Inc. v. Lululemon USA Inc.*, No. 23-cv-771 (AS), 2024 WL 4381070, at *3 (S.D.N.Y. Oct. 3, 2024); *Molo Design*, 2022 WL 2135628, at *3; *Kannuu Pty*, 2021 WL 195163, at *11; *Rovi Guides*, 2017 WL 4876305, at *4. This sub-factor therefore weighs in favor of a stay.

*ii. Timing of the Request for a Stay*

After the Eastern District of Louisiana granted the motion to transfer venue on September 8, 2025, Spotify sought leave to file its motion to stay on a telephonic conference held on October 29, 2025, the very first time the parties appeared in this District. *See* Doc. 134. Spotify contends that it "filed this motion as soon as possible" which was "just nine days after being assigned a judge" in this Court. Doc. 137-1 at 12.

Nothing in the record suggests the timing of Spotify's motion "was dilatory or likely to give it a tactical advantage," *Rovi Guides*, 2017 WL 4876305, at *4, or intended to "somehow game the system," *CDX Diagnostics*, 2014 WL 2854656, at *4. Although Spotify filed its motion to stay before institution of the IPR, the PTAB has since instituted review of all the claims of the '925 Patent, and courts in this District have found motions to stay sufficiently prompt even when filed after the PTAB's decision to institute review.

*See, e.g.*, *Nike*, 2024 WL 4381070, at *3 (holding defendant's motion to stay not dilatory when filed five days after the PTAB instituted IPR on all patents at issue); *Kannuu Pty*, 2021 WL 195163, at *11 (holding defendant's motion to stay sufficiently prompt when filed five days after receiving the last of the PTAB's intuition decisions); *Rovi Guides*, 2017 WL 4876305, at *4 (holding defendant's motion to stay not dilatory or likely to give it a tactical advantage when filed a few days after receiving the PTAB's decision granting IPR review). As such, the timing of Spotify's motion to stay was not dilatory.

Accordingly, this sub-factor weighs in favor of a stay.

*iii. Status of the Review Proceedings*

The PTAB instituted review of the '925 Patent on December 17, 2025. *See* Doc. 141-1. By statute, the PTAB must reach a final determination in those proceedings no later than one year from that date—December 17, 2026. *See* 35 U.S.C. § 316(a)(11). Courts in this District have consistently held this sub-factor favors a stay where the PTAB has instituted IPR proceedings. *See, e.g.*, *Nanobebe US Inc. v. Mayborn (UK) Ltd.*, No. 21-cv-08444 (JLR), 2023 WL 4993642, at *4 (S.D.N.Y. Aug. 4, 2023) (holding the status of the review proceedings favored a stay because the PTAB had instituted review on the challenged patent claims); *Rovi Guides*, 2017 WL 4876305, at *4 (holding that where the PTAB had granted review on most of the patents at issue, the status of the IPR proceedings is not likely to cause any undue prejudice or tactical advantage if a stay is granted). As such, this sub-factor weighs in favor of a stay.

*iv. Relationship of the Parties*

A stay carries a heightened prospect of prejudice to the nonmovant when the parties are direct competitors. *Nike*, 2024 WL 4381070, at *4. This is because a delay in adjudication may produce "outsized consequences," such as "the potential for loss of market share and an erosion of goodwill." *CDX Diagnostics*, 2014 WL 2854656, at *4.

There can be no dispute here that Spotify and Tijerino are not direct competitors.[4] Tijerino has previously conceded that he has "never made any money off" the '925 Patent. *See* Doc. 100-2 at 30. And nothing in the record suggests Tijerino's intent to commercialize, or bring to the marketplace, a product that would compete with Spotify for market share. *Cf. Straight Path*, 2016 WL 6094114, at *3 (noting that the nonmovant, a patent licensing and enforcement firm, is not a direct competitor and therefore would not be unduly prejudiced by a stay). In fact, Tijerino appears intent on securing a licensing agreement with Spotify for the '925 Patent—not to compete with it. *See* Doc. 32 at 60 (explaining that he "respectfully file[d] this complaint . . . confident in an efficient resolution of this matter by extending a license of [his] '925 [P]atent to Spotify"); *id.* at 62 (stating that he seeks "[a]n order requiring Spotify to take a license for the '925 Patent[] on mutually agreeable terms").

To the extent that Tijerino claims that he suffers cognizable prejudice from Spotify's ongoing patent infringement, he fails to identify any particular harm that a stay would cause him. *See Nike*, 2024 WL 4381070, at *4 (explaining that "[w]hen no specific evidence of harm is provided by the nonmoving party, courts are reluctant to find that this factor weighs strongly against a stay"); *Nanobebe US*, 2023 WL 4993642, at *4 (noting that the nonmovant, in opposing a stay, failed to identify any concrete financial harm or any harmful impact on market share or goodwill). In any event, because the parties are not competitors, any harm Tijerino suffers from a delay in adjudication can be fully remedied through monetary relief. *See Molo Design*, 2022 WL 2135628, at *4 (noting that "[e]ven where a defendant continues to engage in allegedly infringing behavior, courts have held that parties that are not competitors can be fully restored with monetary relief").

---

[4] Tijerino argues that the fact that "the parties are not market competitors is legally irrelevant." Doc. 139 at 19. That is wrong. *See, e.g.*, *Nanobebe US*, 2023 WL 4993642, at *4 (stating that consideration of the relationship of the parties turns on whether the parties are competitors in the marketplace) (citing *CDX Diagnostics*, 2014 WL 2854656, at *4).

Because Spotify and Tijerino are not direct market competitors and Tijerino has failed to identify any concrete harm that a stay would cause, this sub-factor weighs in favor of a stay.

* * *

On balance, consideration of these factors, as well as the totality of the circumstances, weigh in favor of a stay pending the IPR proceedings.

**B. Motion to Stay Pending Motion to Dismiss**

If the PTAB invalidates all claims of the ’925 Patent, and that decision is upheld, this case will be moot. *See Fresenius USA*, 721 F.3d at 1340. To the extent any claims of the ’925 Patent remain, Spotify requests that the stay be extended through this Court’s resolution of its pending motion to dismiss. *See* Doc. 137-1 at 14.

*1. Legal Standard*

Pursuant to Federal Rule of Civil Procedure 26(c), a court has discretion to stay discovery “for good cause.” Fed. R. Civ. P. 26(c). It is “well-settled that upon a showing of good cause a district court has considerable discretion to stay discovery.” *Integrated Systems and Power, Inc. v. Honeywell International, Inc.*, No. 09-cv-5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009). “Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay.” *Spencer Trask Software & Information Services, LLC v. RPost International Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002).

In determining whether good cause exists to stay discovery pending a motion to dismiss, courts generally consider: “(1) whether a defendant has made a strong showing that the plaintiff’s claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay.” *New York by James v. Pennsylvania Higher Education Assistance Agency*, No. 19-cv-9155 (ER), 2020 WL 605944, at *1 (S.D.N.Y. Feb. 7, 2020) (quoting *Guiffre v. Maxwell*, No. 15-cv-7433 (RWS), 2016 WL 254932, at *1 (S.D.N.Y. Jan. 20, 2016)). A stay is not,

however, automatic simply upon the basis of the filing of a motion to dismiss. *Integrated Systems and Power*, 2009 WL 2777076, at *1; *Moran v. Flaherty*, No. 92-cv-3200 (PKL), 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992).

*2. Analysis*

*a. Strength of the Motion to Dismiss*

Courts consider "whether the party seeking the stay has 'substantial arguments for dismissal," or whether 'the plaintiff's claim is unmeritorious.'" *Press v. Primavera*, No. 21-cv-10971 (JLR), 2022 WL 17736916, at *1 (S.D.N.Y. Dec. 16, 2022) (quoting *Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)). Courts also consider whether the "resolution of the pending motion to dismiss may dispose of the entire action." *CT Espresso LLC v. Lavazza Premium Coffees Corp.*, No. 22-cv-377 (VSB), 2022 WL 1639485, at *2 (S.D.N.Y. May 24, 2022). This assessment is made "on the limited and preliminary review appropriate to evaluating a stay application." *Gastineau v. ESPN Inc.*, No. 25-cv-2041 (PAE), 2025 WL 2733155, at *1 (S.D.N.Y. Sept. 24, 2025).

Although the Court takes no position on how it will ultimately rule, Spotify has made a substantial threshold showing that its arguments are well-founded in the law. Spotify argues that the claims of the '925 Patent require "automatically calculating . . . amounts earned by an artist and a venue playing [the] new media," and that Tijerino fails to plead any facts creating a plausible inference that it automatically calculates any amounts earned by any venue. Doc. 137-1 at 15 (quoting Doc. 137-3 at 56). Spotify contends that Tijerino's opposition to the motion to dismiss advances the theory that Spotify's calculation of payments to the music rightsholder, such as performance rights organizations, constitute calculating payments to "venues" within the meaning of the patent. *Id.* at 16. And Spotify argues that this theory fails on several grounds: first, a performance rights organization is not a "venue" under any reasonable interpretation of that term; second, the patent specification expressly distinguishes venues

from music rights holders, such as performance rights organizations; and third, the ’925 Patent requires automatically calculating payments to both venues and artists, a requirement which Spotify does not meet. *Id.*

Further, the Eastern District of Louisiana’s transfer order deferred resolution of Spotify’s motion to dismiss but noted that Tijerino’s position that the term “venue” can include performance rights organizations is unsupported by the “[i]ndisputable facts and law.” Doc. 107 at 17.

Accordingly, this factor favors a stay.

*b. Breadth of Discovery Sought and Burden of Responding*

Spotify argues that a stay pending its motion to dismiss “is all that will stop Tijerino’s barrage of written discovery and meritless motions.” Doc. 137-1 at 20.

As a threshold matter, Spotify contends that Tijerino has filed “frivolous motions and notices” which “clutter the docket” and impose an “unnecessar[y] burden” on both it and the Court. *Id.* at 18. In support of this assertion, however, Spotify identifies only a single motion and four notices. *See id.* Even assuming, *arguendo*, that these filings were frivolous, Spotify neither establishes that Tijerino is likely to continue such conduct nor cites any authority for the proposition that a party’s prior court filings are relevant to the analysis here. Indeed, courts evaluating this factor focus on the burden of anticipated discovery.

“Normal discovery in a limited matter does not alone rise to the level of good cause” warranting a stay. *Guiffre*, 2016 WL 254932, at *2. A party seeking a stay must proffer specific reasons why the anticipated discovery warrants one—for example, where discovery is likely to “require considerable effort and expense,” *Raanan v. Binance Holdings Limited*, No. 24-cv-697 (JGK), 2026 WL 1480388, at *1 (S.D.N.Y. May 26, 2026), or be “unusually complex,” *Combs v. Burgess*, No. 25-cv-650 (JPC), 2026 WL 205571, at *2 (S.D.N.Y. Jan. 27, 2026). “[V]ague and conclusory contentions” that discovery will be “voluminous and burdensome” are insufficient to carry this burden.

*Mirra v. Jordan*, No. 15-cv-4100 (AT) (KNF), 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016).

Turning to the discovery itself, the only discovery Spotify identifies is Tijerino's 1,153 requests for admissions. *See* Doc. 137-1 at 18. As an initial matter, Spotify has already responded to 200 of those requests.[5] *See* Doc. 137-10. To the extent Spotify contends that those requests are individually improper or overly burdensome, that objection is more appropriately addressed through a motion directed at the requests themselves. *See Guiffre*, 2016 WL 254932, at *2 (stating that where the anticipated discovery "does not reach such a wide-breadth" as to warrant a stay, "[a]ny objections to individual discovery requests can be dealt with accordingly"). Consideration of this factor turns on whether even appropriately tailored discovery in the case as a whole will likely prove unduly burdensome.

Spotify does not argue—and the record does not suggest—that appropriately tailored discovery in this case will prove particularly costly or burdensome.[6]

[5] Spotify has already responded to 200 of those requests for admission by objecting to each one using identical language. *See* Doc. 137-10.

[6] At bottom, Spotify's main contention appears to be that "[a] stay is required to curb Tijerino's [artificial intelligence] fueled campaign of voluminous discovery and frivolous court filings." Doc. 137-1 at 17. For example, Spotify contends that, among the 1,153 requests for admission served by Tijerino, more than 200 were directed to whether the Eastern District of Louisiana was a proper venue, even after that issue was fully briefed and pending before the Eastern District of Louisiana; more than 200 were directed to the parallel IPR proceeding, allegedly "in circumvention of PTAB rules;" and several requests were directed to "irrelevant factual issues or purely legal issues after being admonished that was an improper use of [requests for admission]." Doc. 140 at 5.

Spotify further alleges that throughout these proceedings Tijerino has repeatedly "cited to [artificial intelligence] hallucinated case law." *Id.* at 19. For example, Tijerino cited: *Rosa v. Taser Int'l, Inc.*, 527 F.3d 1333, 1339 (11th Cir. 2008), Doc. 27 at 2; *SEC v. Happ*, 295 F.R.D. 1, 7 (D.D.C. 2013), Doc. 42 at 4; *Hill v. Equifax Info. Servs., LLC*, 2021 WL 5893984, at *3 (D. Kan. Dec. 13, 2021), Doc. 42 at 4; and *SEC v. American BD Co.*, 2015 WL 13255600 (N.D. Tex. Oct. 6, 2015), Doc. 64-4 at 4. These cases do not exist and appear to be fabricated.

Additionally, Spotify contends that Tijerino, in his opposition to the instant motion, "continues his blind reliance on [artificial intelligence]." Doc. 140 at 6. The Court further notes that Tijerino has identified as an intended trial "witness" an "[artificial intelligence] assisted analysis tool ('Lex')." Doc. 123-2 ¶ 5.

While the Court has no direct evidence that Tijerino is using artificial intelligence to draft his submissions, his filings have been, at a minimum, curious.

Accordingly, this factor weighs slightly against a stay.

*c. Prejudice*

Tijerino contends that Spotify's "ongoing patent infringement" is prejudicial. Doc. 139 at 19. While the Court is sympathetic to Tijerino's desire to protect his patent rights, he nonetheless fails to explain with any specificity how a stay would prejudice him. *See Gastineau*, 2025 WL 2733155, at *2 (giving no credit to a plaintiff's "general and unsubstantiated" assertions that a stay would be prejudicial); *Ema Financial, LLC v. Vystar Corp.*, 336 F.R.D. 75, 84 (S.D.N.Y. 2020) (stating that the prejudice factor favors a stay where the nonmovant does nothing to explain any prejudice it would face if discovery was stayed). In any event, to the extent Spotify is found to have infringed the '925 Patent, Tijerino may recover monetary damages.

Moreover, the Court has already stayed this action pending resolution of the IPR proceedings. To the extent any claims remain and the stay is extended through resolution of the pending and fully briefed motion to dismiss, any additional delay would be limited. *See Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-0293 (LTS) (JCF), 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016) (noting that because "the motion to dismiss is fully briefed . . . any consequent stay is likely to be short-lived"); *Rivera v. Heyman*, No. 96-cv-4489, 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997) (concluding that "[a] stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue").

Thus, this factor weighs in favor of a stay.

* * *

On balance, consideration of these factors weighs in favor of a stay of discovery pending resolution of Spotify's motion to dismiss.

## III. CONCLUSION

For the foregoing reasons, Spotify's motion for a stay pending resolution of its petition for *inter partes* review is GRANTED, and Spotify's motion for a stay pending resolution of its motion to dismiss is GRANTED. The parties are directed to file a joint status report within 48 hours of the PTAB's final written decision. In that status report, the parties shall update the Court regarding the status of Tijerino's infringement contentions in light of the PTAB's decision. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 137, and stay the case.

It is SO ORDERED.

Dated: September 29, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.